William A. Isaacson (DC SBN 414788) (*Pro Hac Vice* to be filed)
wisaacson@bsfllp.com
William C. Jackson (DC SBN 475200) (*Pro Hac Vice* to be filed)
wjackson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Attorneys for CZ Services, Inc. and CareZone Pharmacy LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CZ SERVICES, INC., d/b/a CAREZONE PHARMACY and CAREZONE PHARMACY LLC,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>ANTHEM INSURANCE COMPANIES, INC., PREMERA BLUE CROSS, and BLUE CROSS AND BLUE SHIELD OF KANSAS CITY,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(i) Unfair Competition, Cal. Bus. & Prof. Code §§ 16600, 17200 *et seq*.**<br>**(ii) Violation of Tennessee's Any Willing Provider Law Tenn. Code § 56-7-2359**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

COMPLAINT AND DEMAND FOR JURY TRIAL ................................................................. 1

NATURE OF THE ACTION ................................................................................................. 1

JURISDICTION ..................................................................................................................... 2

VENUE ................................................................................................................................... 3

INTRA DISTRICT ASSIGNMENT ....................................................................................... 3

THE PARTIES ....................................................................................................................... 3

BACKGROUND .................................................................................................................... 5

FACTS GIVING RISE TO THIS ACTION ........................................................................... 7

    A. As the Insurers' Pharmacy Benefit Manager, ESI Acted As The Insurers' Agent and Delegate In Furtherance of The Insurers' Business Interests ........................ 7

    B. Plaintiffs Were Improperly And Unlawfully Terminated From ESI's Pharmacy Network Plan. ................................................................................ 7

    C. The Insurers, Through ESI'S Illegal and Improper Termination of Plaintiffs from Its Pharmacy Network, Are Violating Various Laws. ................................ 9

CLAIMS ............................................................................................................................... 13

    COUNT I ...................................................................................................................... 13

        Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §§ 16600, 17200 *et seq.* .................................................................................. 13

    COUNT II ..................................................................................................................... 15

        Violation of Tennessee's "Any Willing Provider" Statute  Tenn. Code Ann. § 56-7-2359 .................................................................................................... 15

PRAYER FOR RELIEF ....................................................................................................... 15

JURY DEMAND .................................................................................................................. 16

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs CZ Services, Inc., d/b/a CareZone Pharmacy, and its subsidiary CareZone Pharmacy LLC (collectively "Plaintiffs"), through their undersigned attorneys, allege for their Complaint against Defendants Anthem Insurance Companies, Inc., Blue Cross and Blue Shield of Kansas City, and Premera Blue Cross (collectively the "Insurers" or "Defendants") as follows:

**NATURE OF THE ACTION**

1. This is an action against the Insurers for unfair competition and violations of "Any Willing Provider" laws on the grounds that the Insurers, through their pharmacy benefit manager Express Scripts, Inc. ("ESI"), unlawfully terminated Plaintiffs from participating in the Insurers' pharmacy network plan administered by ESI—thus excluding Plaintiffs, which are licensed pharmacies, from serving the Insurers' members.

2. ESI is a pharmacy benefit manager that functions under the control of the Insurers and acts as the Insurers' agent and delegate in administering the Insurers' pharmaceutical benefits plans, including determining which pharmacies are allowed to participate in the pharmacy network. ESI has unfairly restrained competition, and acted unlawfully by excluding Plaintiffs from participating on the same terms and conditions as any other pharmacies. The Insurers, as principals, are answerable for the actions of ESI, which acted on behalf of the Insurers.

3. Additionally, by allowing the termination of Plaintiffs from ESI's pharmacy network plan, the Insurers have engaged in unfair competition in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 16600, which prohibits, and voids, contractual covenants restraining competition. ESI's contractual covenant excluding "mail order" pharmacies from its pharmacy network is a covenant restraining competition. The Insurers, as ESI's principals and delegators on whose behalf ESI was acting, are responsible for ESI's unlawful contractual covenant restraining competition.

4. The Insurers are also engaging in unlawful and unfair business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, which prohibits "unlawful, unfair or fraudulent" business acts and practices. The Insurers have ratified the refusal by ESI, acting on the Insurers' behalf, to allow Plaintiffs to provide covered prescription drug

1
**CZ SERVICES, INC.'S AND CAREZONE PHARMACY LLC'S COMPLAINT**

services to their insureds in violation of the "Any Willing Provider" provisions of the Medicare Part D Act and Social Security Act, which mandate that health insurance companies such as the Insurers permit the participation of any pharmacy in its network that serves Medicare Part D and Medicaid prescription drug benefits and meets certain specified criteria.

5. Likewise, the Insurers' ratification of ESI's termination of CareZone Pharmacy LLC, a pharmacy in Nashville, Tennessee, from ESI's prescription drug plan network violates the "Any Willing Provider" provisions of Tennessee Code § 56-7-2359(a), which provides "No health insurance issuer and no managed health insurance issuer may: (1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan[.]"

6. The Insurers, through ESI's termination of Plaintiffs from its pharmacy network, are denying Plaintiffs the opportunity to participate in the pharmacy network on the same terms and conditions as other, similarly-situated pharmacies, including but not limited to, on information and belief, ESI's own mail-order pharmacies.

7. The Insurers' improper and unlawful actions in denying Plaintiffs the right to participate on the same terms and conditions as other pharmacies serving the Insurers' members not only harm Plaintiffs, but also harm thousands of patients who rely on Plaintiffs' unique adherence packaging, business partnerships, and other services, depriving them of their choice of pharmacy and harming their health and welfare.

## JURISDICTION

8. The Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a). The parties are completely diverse in citizenship and the amount in controversy, including the value of any injunctive relief, exceeds $75,000.

9. The Court has personal jurisdiction over the parties under due process and California's long-arm statute, California Code of Civil Procedure § 410.10. Plaintiff CZ Services, Inc. maintains its principal place of business and has its headquarters in Richmond, California, in this District. The Insurers maintain presence and regularly conduct business within California and

CZ SERVICES, INC.'S AND CAREZONE PHARMACY LLC'S COMPLAINT

this District, including without limitation by serving patients and other interested parties that Defendants know or have reason to know are located within in this District and use Plaintiffs' services. In addition, the Insurers knew, or should have known, that their conduct would cause injury in this District.

**VENUE**

10.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in which a substantial part of the events or omissions giving rise to the claim occurred. The acts complained of have and will continue to have substantial effects in this District, and Plaintiff CZ Services, Inc. maintains its principal place of business in this District.

**INTRA DISTRICT ASSIGNMENT**

11.  This action arose in Contra Costa County. It is therefore properly assigned to San Francisco or Oakland Division of this Court pursuant to Local Rule 3-2(d).

**THE PARTIES**

12.  Plaintiff CZ Services, Inc., d/b/a CareZone Pharmacy is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 860 Harbor Way South, Richmond, California 94804. CZ Services, Inc. is a retail walk-in pharmacy that has been in operation since June 2015. It has licenses to fill prescriptions for the residents of all 50 states and the District of Columbia.

13.  CareZone Pharmacy LLC is a wholly owned subsidiary of CZ Services, Inc. CareZone Pharmacy LLC is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 800 Airpark Center Dr. Suite 809, Nashville, Tennessee 37217. CareZone Pharmacy LLC is a retail walk-in pharmacy that has been in operation since April 2017. It has licenses to fill prescriptions for the residents of all 50 states and the District of Columbia.

14.  CZ Services, Inc. is wholly owned by Jonathan Schwartz, the former CEO of Sun Microsystems. CareZone Pharmacy LLC is wholly owned by CZ Services, Inc.

15.  Defendant Blue Cross and Blue Shield of Kansas City is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at

2301 Main Street, Kansas City, Missouri 64108. Blue Cross and Blue Shield of Kansas City started in 1938 and now provides health insurance to nearly one million members, including to members located in California and Tennessee through its BlueCard program. On information and belief, during all relevant times to the Complaint, Blue Cross and Blue Shield of Kansas City contracted with ESI to administer its pharmacy benefit services and provide mail-order pharmacy services.

16. Defendant Anthem Insurance Companies, Inc. is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204. Anthem is one of the largest health benefits companies in the United States, and, through its affiliated health plans, delivers a number of health benefit solutions and related services, including providing health care insurance to members located in California and Tennessee through its BlueCard program. On information and belief, during all relevant times to the Complaint, Anthem Insurance Companies, Inc. contracted with ESI to administer its pharmacy benefit services and provide mail-order pharmacy services.

17. Defendant Premera Blue Cross is a corporation organized and existing under the laws of the State of Washington, with its principal place of business located at 7001 220th Street, S.W., Mountlake Terrace, Washington 98043. Premera is a not-for-profit Blue Cross Blue Shield licensed health insurance company that provides health insurance and related services to approximately two million individuals, including to members located in California and Tennessee through its BlueCard program. On information and belief, during all relevant times to the Complaint, Premera Blue Cross contracted with ESI to administer its pharmacy benefit services and provide mail-order pharmacy services.

18. Non-party ESI is the largest PBM in the United States, with more than 1.4 billion prescription drugs dispensed to consumers through its Pharmacy Services Network each year. ESI conducts business throughout the United States and controls pharmacy benefits for tens of millions of patients, including in this District. ESI also operates as a pharmacy, directly or through subsidiaries that include ESI Mail Order Processing, Inc., and ESI Mail Pharmacy Service, Inc. ESI, directly or through its subsidiaries, has sold prescription drugs to consumers by mail-order delivery during all times relevant to this Complaint. In 2017, ESI's annual operating revenue from

its operations exceeded $100 billion.

19. At all relevant times, Defendants regularly performed, transacted, and solicited business in the State of California and derived substantial revenue from goods used and consumed and services rendered in the State of California.

## BACKGROUND

20. CZ Services, Inc. and CareZone Pharmacy LLC are independent, retail pharmacies that dispense prescriptions to walk-in patients, or to a walk-in agent of the patient, as allowed under state and federal laws. Both pharmacies are licensed and in good standing in all relevant states and the District of Columbia.

21. Plaintiffs have a partnership with non-party CareZone Inc., a separate company that assists patients and their family members in managing the patient's medications. CareZone Inc. offers a smartphone application (the "CareZone app"), which allows a patient to take a photograph of his or her prescription bottle and create an automatic list of all the medications he or she is taking, which can be shared with family members or health-care providers, as well as to set automatic reminders to take the proper dose of medication on time. Another service that CareZone Inc. provides to some of its customers is Pharmacy Assistance Services, whereby CareZone Inc., at the request of a user, coordinates the use of agents to pick up medications from pharmacies on behalf of those customers, and deliver those medications to the patient at no additional cost. Through CareZone Inc.'s partnership with Plaintiffs, patients' medications can be provided with "adherence packaging," which assists patients in taking their medication regularly. These services combine to provide a valuable resource to patients, particularly those managing multiple health conditions and medications. The CareZone app has millions of users and has assisted tens of thousands of Plaintiffs' patients in increasing their compliance with the medication regimens prescribed by their physicians.

22. ESI—one of the largest PBMs in the country—controls the pharmacy benefits of approximately 83 million Americans. ESI is the 22nd largest company in the United States, with 2016 revenue of approximately $101 billion; in the same year, it processed more than 1.4 billion claims for prescription benefits. One of ESI's primary functions as a PBM is to act as a

1 | middleman between health insurance companies, like the Insurers and pharmacies.

2 | 23. In its role as a PBM, ESI provides a bundle of pharmacy network services to the Insurers, known as its Pharmacy Services Network ("PSN" or "ESI PSN"), through which sales of prescription drugs are made to the consumers whose drug benefits are managed by ESI. The Insurers offer prescription drug benefits and, in turn, contract with ESI to manage their insureds' claims paperwork, negotiate with drug companies, and administer reimbursements to pharmacies that fill their insureds' prescriptions (on behalf of the Insurers). The Insurers also delegate to ESI the ability to set the terms and provisions for administering the PSN.

24. To become a provider in ESI's PSN, ESI requires that pharmacies enter into its form Pharmacy Provider Agreement ("Agreement"), a non-negotiable contract with terms unilaterally determined by ESI. One of the terms of the Agreement requires that participating pharmacies be retail pharmacies (*e.g.* a pharmacy that primarily fills and sells prescriptions through a retail, storefront location) and not mail order pharmacies. There are currently approximately 67,000 pharmacies in the United States that have entered Agreements with ESI and are providers to ESI.

25. On or around May 15, 2015, CZ Services, Inc. and ESI executed an Agreement—making CZ Services, Inc. an approved ESI provider in ESI's PSN. On or around July 3, 2017, CareZone Pharmacy LLC also entered into an Agreement with ESI and became an ESI provider.

26. Until ESI terminated Plaintiffs from its PSN, on July 13, 2018, ESI acted as an intermediary between the Insurers and Plaintiffs—processing and reimbursing prescription drug claims filed by Plaintiffs throughout the country, including in California, for each of the Insurers.

27. In addition to providing PBM services to the Insurers, ESI also directly or through its subsidiaries that include ESI Mail Order Processing, Inc. and ESI Mail Pharmacy Service, Inc., operates its own mail order pharmacies. In fact, ESI is the largest mail-order pharmacy company in the United States, with approximately $45 billion in annual revenue.

28. On information and belief, ESI provides, or provided, mail-order prescriptions through its in-house mail-order pharmacies pursuant to contracts with the Insurers. ESI is reimbursed by the Insurers for these services. The Insurers, through ESI, do not, however, afford

Plaintiffs the opportunity to provide the same kind of service.

29. The Insurers, through their ratification of ESI's termination of Plaintiffs from its pharmacy network, have denied Plaintiffs the statutorily-guaranteed right to join the network as providers willing and able to participate on the same terms and conditions as are offered to any other similarly-situated pharmacy participating in ESI's pharmacy network, including, on information and belief, ESI itself. The Insurers, as principals that have delegated their obligations to ESI and on whose behalf ESI acts, are equally responsible for ESI's actions. ESI has taken this approach for a single reason: to steer as many patients as it can to its own mail-order pharmacy, in order to thwart competition from innovative market entrants, and thereby increase ESI's profits.

**FACTS GIVING RISE TO THIS ACTION**

A. **As the Insurers' Pharmacy Benefit Manager, ESI Acted As The Insurers' Agent and Delegate In Furtherance of The Insurers' Business Interests.**

30. On information and belief, the Insurers delegated various responsibilities and authority to ESI as their pharmacy benefit manager.

31. On information and belief, the Insurers entered into agreements with ESI memorializing this delegation of authority and authorizing ESI to act on behalf of the Insurers to administer the Insurers' prescription benefit plans.

32. In doing so, the Insurers were aware of, and ratified, ESI's actions and conduct taken within the scope of its authority, including the execution of contracts with third parties for the benefit of the Insurers.

33. On information and belief, the Insurers nonetheless retained and exercised control over ESI such that they, among other things, were able to dictate which pharmacies were permitted to join ESI's pharmacy network, how to ensure ESI's actions complied with "Any Willing Provider" laws, and which claims should ultimately be processed.

B. **Plaintiffs Were Improperly And Unlawfully Terminated From ESI's Pharmacy Network Plan.**

34. ESI communicated to Plaintiffs that Plaintiffs were being terminated because it perceived Plaintiffs to be acting as a mail order pharmacy, which is prohibited by ESI. On

information and belief, ESI has similarly terminated other pharmacies based on the perception that they were acting as mail order pharmacies. ESI's terminations of these pharmacies have sent a clear message that they do not, and will not, accept any other pharmacy in their Network that even has the appearance of a mail order pharmacy.

35.  In fact, when Plaintiffs inquired whether ESI would work with mail-order pharmacies, ESI stated it "is a mail order pharmacy that doesn't accept another mail order pharmacy service." *See* Exhibit A; *see also* Exhibit B. ESI has launched a campaign, including onerous investigations and audits, to identify provider pharmacies that ESI believes might compete with ESI's mail-order business. ESI has also threatened to punish provider pharmacies that engage in activities that ESI perceives as a threat to its mail-order business. To enforce these threats, ESI has terminated pharmacies for allegedly engaging in activities that ESI characterizes as mail-order. Plaintiffs are a victim of these tactics.

36.  ESI announced its plan to terminate its contracts with Plaintiffs because Plaintiffs emerged as an innovative competitor to ESI's mail-order pharmacy business.

37.  Initially, ESI accused Plaintiffs of operating as mail-order pharmacies, in violation of ESI's Pharmacy Provider Agreement, despite the fact that Plaintiffs do not mail or send any prescriptions to customers. In reality, Plaintiffs fill prescriptions both for patients who walk into Plaintiffs' pharmacies and for those who are unable or unwilling to walk in themselves, and thus wish to have their prescriptions picked up and delivered to them by their agents.

38.  Over a ten-month period, ESI offered shifting and inconsistent pre-textual rationales for terminating its Pharmacy Provider Agreements with Plaintiffs. Despite several months of Plaintiffs' good-faith negotiations, ESI ultimately sent both pharmacies notices of termination that reiterated many of its false, pre-textual allegations. As to CZ Services, Inc., ESI's notice of termination also terminated the Agreement under the Agreement's "termination at will" provision.

39.  ESI's real reason for terminating Plaintiffs is that their innovative services designed to better assist patients, combined with the services provided by CareZone Inc., threaten ESI's dominant position in the market for direct delivery of prescription drugs to patients.

40. Prior to termination Plaintiffs derived substantial revenue from being in network with ESI and reasonably expected that such revenue would continue to grow. As such, Plaintiffs seek an injunction that they value above $75,000.

**C. The Insurers, Through ESI'S Illegal and Improper Termination of Plaintiffs from Its Pharmacy Network, Are Violating Various Laws.**

41. Through their ratification of ESI's termination of Plaintiffs from its pharmacy network plan, the Insurers are violating various state laws.

42. The categorical exclusion of Plaintiffs from the pharmacy network because ESI has deemed them "mail-order" pharmacies is a violation of California Business & Professions Code § 16600, which voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." The Insurers, through ESI, have restrained Plaintiffs from engaging in business for which they are licensed and fully willing and able to engage. As principals of their agent and delegate ESI, the Insurers are answerable to Plaintiffs for the contracts that ESI entered into in furtherance and to the benefit of the Insurers' business.

43. The Insurers are also violating California's unfair competition law by engaging in "unlawful, unfair or fraudulent" business acts and practices on the grounds that they are violating the "Any Willing Provider" provisions of the Medicare Part D Act, 42 U.S.C. § 1395w-104(b)(1)(A), and the Social Security Act, 42 U.S.C. § 1396a.

44. The "Any Willing Provider" provision of Medicare Part D mandates that "[a] prescription drug plan shall permit the participation of any pharmacy that meets the terms and conditions under the plan." 42 U.S.C. § 1395w-104(b)(1)(A). Likewise Section 1902(a)(23) of the Social Security Act, 42 U.S.C. § 1396a, provides Medicaid beneficiaries the right to obtain medical services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide . . . such services."

45. Plaintiffs meet the terms and conditions of the plans for Medicare Part D and Medicaid, and have accepted and complied with the pharmacy network standard terms and conditions, as described herein. Therefore, ESI must permit Plaintiffs to participate in its network under the "Any Willing Provider" provisions.

46. The goal of the "Any Willing Provider" provisions is to allow patients enrolled in prescription drug plans to obtain their prescriptions at the pharmacy of their choice. The Act ensures that a Medicare patient's relationship with his or her pharmacist can be maintained by ensuring a pharmacy's equal participation in the prescription drug plan.

47. Medicare covers uniquely vulnerable populations within the United States. In order to qualify for Medicare, potential beneficiaries must be 65 years of age or older, have certain disabilities, or have end-stage renal disease.[1] AARP data released in November 2017 found that, in 2016, more than one third of Medicare recipients were 75 or older; 16 percent qualified for coverage before turning 65, on the basis of permanent disability; and 66 percent lives with two or more chronic conditions.[2] Medicare recipients also tend to be lower-income. In 2016, half of all Medicare beneficiaries had incomes less than two times the federal poverty level, and one in four had less than $14,550 in total savings (e.g., retirement accounts and financial assets).[3]

48. Plaintiffs serve this vulnerable population in a unique way: the vast majority of patients who use Plaintiffs also use the CareZone app, which, as described above, is designed to help chronically ill people manage their health and multiple medications. Because most people who use the app are quite ill, most people who use the pharmacies are the same. The average pharmacy patient is 56 years old and is taking five medications. Nearly 50% are on Medicare and/or Medicaid. The pharmacies do not fill acute prescriptions—all of their patients are on long-term maintenance prescription regimens. In addition Plaintiffs provide pharmacy care for participants in federal PACE programs serving elder populations, with the average patient taking eleven medications.

49. The "Any Willing Provider" provisions also protect a pharmacy's right to participate in Medicare and Medicaid prescription drug dispensing. As stated above, Plaintiffs

---

[1] Center for Medicare and Medicaid Services, General Info, *available at* https://www.cms.gov/Medicare/Medicare-General-Information/MedicareGenInfo/index.html
[2] Olivia Dean, Claire Noel-Miller, and Keith Lind, Who Relies on Medicare? A Profile of the Medicare Population (AARP Public Policy Institute, November 2017), *available at* https://www.aarp.org/content/dam/aarp/ppi/2017/11/who-relies-on-medicare-a-profile-of-the-medicare-population.pdf (last accessed July 20, 2019).
[3] *Id.*

have remained in compliance with all of the terms and conditions of ESI's provider agreement. However, ESI, and thus the Insurers, decided to proceed with the termination of the Plaintiffs' Agreements based on the false pretense that they are operating mail-order pharmacies.

50. As relates to CareZone Pharmacy, LLC—the Tennessee pharmacy—ESI's conduct constitutes a violation of Tennessee's "Any Willing Provider" statute, Tenn. Code Ann. § 56-7-2359, which requires equal treatment of similarly-situated pharmacies, and provides that a health insurance issuer such as the Insurers may not deny a licensed pharmacy the right to participate in such plans on the same terms and conditions as are offered to other similarly-situated pharmacies.

51. Specifically, the "Any Willing Provider" provisions of the Consumer Health Advocacy Act of 1998, Tenn. Code Ann. § 56-7-2359(a), state, in pertinent part, that "No health insurance issuer and no managed health insurance issuer may . . . [d]eny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan; provided, that nothing in this subdivision (a)(1) shall prohibit a managed health insurance issuer or health insurance issuer from establishing rates or fees that may be higher in nonurban areas, or in specific instances where a managed health insurance issuer or health insurance issuer determines it necessary to contract with a particular provider in order to meet network adequacy standards or patient care needs."

52. The Insurers are "health insurance issuer[s]" under Tenn. Code Ann. § 56-2-125(a)(6), which defines "health insurance issuer" to include "an entity subject to the insurance laws of this state, or subject to the jurisdiction of the commissioner, that contracts or offers to contract to provide health insurance coverage, including, but not limited to, an insurance company, a health maintenance organization and a nonprofit hospital and medical service corporation." Tenn. Code Ann. § 56-2-125(a)(6). Through various programs, the Insurers have provided prescription drug coverage to individuals who are located in Tennessee.

53. For at least one year, Plaintiff CareZone Pharmacy LLC participated in ESI's pharmacy network on the same terms and conditions as are offered to any other pharmacy that

participates in ESI's networks. *See* Exhibit A; *see also* Exhibit B. Perceiving Plaintiffs to be a competitive threat, ESI terminated CareZone Pharmacy LLC from its pharmacy network, in violation of Tennessee's "Any Willing Provider" statute.

54. Although the Insurers delegate to ESI such things as the ability to set the terms and provisions for administering the PSN, the Insurers are ultimately responsible for the provision of the pharmacy benefits to their insureds and the reimbursement of those costs incurred by the PBMs and the pharmacies. Thus, the Insurers, as the ultimate payors and principals of their agent ESI, are accountable for the unlawful termination and exclusion of Plaintiffs from the PSN.

55. In addition, ESI's decision to terminate Plaintiffs ignores the evidence that Plaintiffs are not mail-order pharmacies. This false, pretextual decision demonstrates ESI's desire to abuse its powerful industry position to eliminate entities that ESI perceives to be potential competition to its mail-order pharmacy business. Even if Plaintiffs were in fact "mail order" pharmacies as ESI contends, Plaintiffs are nonetheless being excluded from ESI's pharmacy network while ESI permits, on information and belief, the mail-order pharmacy Pill Pack, Inc. to participate in its network. This contradiction is proof that ESI is violating the "Any Willing Provider" laws by excluding similarly-situated pharmacies willing and able to participate on the same terms and conditions as another that is permitted to participate.

56. By terminating Plaintiffs from its network, the Insurers, through ESI, are jeopardizing the health and care of Plaintiffs' uniquely vulnerable, elderly, and poly-chronic patients, depriving them of the valuable services that Plaintiffs, on their own and in conjunction with the CareZone app, provide in order to help them manage their health conditions and medications. Without those services, these vulnerable patients' compliance with prescription medications, and therefore their health and welfare, will suffer.

57. ESI's termination of the pharmacies is unlawful under the federal AWP law, Tennessee's "Any Willing Provider" statute, and represents unfair competition under California law, as applicable.

///

///

12
CZ SERVICES, INC.'S AND CAREZONE PHARMACY LLC'S COMPLAINT

# CLAIMS

## COUNT I

**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 16600, 17200 *et seq.***

58. Plaintiffs restate and incorporates by reference each of the allegations set forth herein.

59. By the facts alleged above, the Insurers, through ESI, have engaged in unfair competition within the meaning of California Business & Professional Code § 17200 *et seq.*, (the "Unfair Competition Law" or "UCL"), which prohibits "unlawful, unfair or fraudulent" business acts and practices.

60. ESI acts, or acted, on the Insurers' behalf by serving as the Insurers' pharmacy benefit manager, and, as such, is the Insurers' agent and delegate. The Insurers are therefore responsible for the actions of their agent and delegate, ESI.

61. ESI's conduct, as alleged herein, is unlawful and unfair because it constitutes a violation of the laws described in the Counts in this Complaint. For example, ESI's unlawful business acts and practices significantly threaten to harm competition in the market of pharmacies, and harm those consumers reliant on the pharmaceutical services provided by Plaintiffs.

62. The announced termination of Plaintiffs from ESI's network is unlawful as a violation of California Business & Professions Code § 16600, which voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." The Insurers, as principals of their agent and delegate ESI, are answerable to Plaintiffs for the contracts that ESI entered into in furtherance and to the benefit of the Insurers.

63. In addition, the Insurers, by and through their agent ESI's termination of Plaintiffs from ESI's pharmacy services network, are unlawfully violating the "Any Willing Provider" provisions of the Medicare Part D Act, 42 U.S.C. § 1395w-104(b)(1)(A) and the Social Security Act, 42 U.S.C. § 1396a. The Insurers are required to permit the participation of any pharmacy that serves Medicare Part D and Medicaid prescription drug benefits and meets certain specified criteria. Plaintiffs meet the conditions of the "Any Willing Provider" provisions, as applicable. It

is therefore unlawful for the Insurers, through ESI, to refuse to permit Plaintiffs to participate in ESI's pharmacy services network.

64. The Insurers, through their ratification of ESI's unlawful termination of Plaintiffs from its network, threaten to harm competition by systematically excluding pharmacies like Plaintiffs that ESI, and thus the Insurers, (rightly or wrongly) view to compete with ESI's captive mail-order pharmacy. Such conduct is also harming vulnerable patients reliant on Medicare or Medicaid who chose to fill their prescriptions with Plaintiffs and who have lost the ability to make that choice because Plaintiffs' pharmacies are excluded from ESI's network.

65. In addition, the Insurers' conduct, through ESI, as alleged herein, is unfair. The alleged conduct threatens an incipient violation of an antitrust law, violates the policy or spirit of an antitrust law, or otherwise significantly threatens or harms competition.

66. There were reasonably available alternatives to further ESI's, and thus the Insurers', legitimate business interests, other than the conduct described herein.

67. Through ESI, the Insurers are engaging in unlawful, unfair, and fraudulent business acts and practices, which are causing a direct and proximate injury to Plaintiffs. Plaintiffs have suffered, and continue to suffer, harm. The unlawful, unfair, and fraudulent business acts and practices by Insurers, through ESI, have deprived Plaintiffs of customers and other business prospects.

68. Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct. Absent injunctive relief, Plaintiffs will continue to be irreparably harmed by the Insurers actions.

69. As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of the Insurers' conduct.

70. Plaintiffs seek an injunction, valued at more than $75,000, prohibiting the Insurers from continuing such practices, restitution, and any and all other relief this Court deems appropriate.

///

///

///

# COUNT II

### Violation of Tennessee's "Any Willing Provider" Statute
### Tenn. Code Ann. § 56-7-2359

71. Plaintiffs restate and incorporate by reference each of the allegations set forth herein.

72. As health insurance companies providing prescription drug coverage to members in Tennessee, the Insurers operate under and are subject to the "Any Willing Provider" provisions of the Consumer Health Advocacy Act of 1998, Tenn. Code Ann. § 56-7-2359.

73. CareZone Pharmacy LLC—based in Nashville, Tennessee—is a licensed pharmacy willing to participate in ESI's pharmacy network plan on the same terms and conditions as are offered to any other pharmacy participating in the network.

74. ESI, a pharmacy benefit manager, is the agent and delegate of the Insurers and thus the Insurers, as principals, are ultimately answerable for ESI's actions.

75. The Insurers, through ESI's termination of CareZone Pharmacy LLC from its network, are in direct violation of the Tennessee "Any Willing Provider" statute.

76. The Insurers' actions have caused, and continue to cause, CareZone Pharmacy LLC damage.

77. The Insurers' conduct constitutes a violation of Tenn. Code Ann. § 56-7-2359.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For declaratory relief that the Insurers, through ESI, have improperly terminated Plaintiffs from ESI's network;

B. For injunctive relief, valued above $75,000, enjoining the Insurers from denying Plaintiffs the right to participate as providers of pharmacy services in ESI's pharmacy networks on the same terms and conditions offered to any other provider;

C. For restitution and other equitable relief in an amount to be determined;

D. For an order awarding Plaintiffs its reasonable attorneys' fees;

E. For costs of suit incurred herein;

| | | |
|---|---|---|
| 1 | F. | For prejudgment interest; and |
| 2 | G. | For such other and further relief as is just and proper. |

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 1, 2019            Respectfully submitted,


By:  /s/ Meredith R. Dearborn
William A. Isaacson (DC SBN 414788)
(*Pro Hac Vice* to be filed)
wisaacson@bsfllp.com
William C. Jackson (DC SBN 475200)
(*Pro Hac Vice* to be filed)
wjackson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Attorneys for CZ Services, Inc. and CareZone Pharmacy LLC*